695 So.2d 534 (1997)
STATE of Louisiana
v.
Carlos A. NEVILLE.
No. 96-KA-0137.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1997.
*536 Archie B. Creech, New Orleans, for Defendant/Appellant Carlos Neville.
Harry F. Connick, District Attorney, Val Solino, Assistant District Attorney, Thomas Lipscomb, Law Clerk, New Orleans, for Appellee State.
Before LOBRANO, JONES and MURRAY, JJ.
MURRAY, Judge.
Carlos Neville appeals his conviction for purse snatching, a violation of La. R.S. 14:65.1, as well as his adjudication and sentence under the multiple offender statute, La. R.S. 15:529.1. For the reasons which follow, we affirm the conviction, vacate the sentence and remand for resentencing.

FACTS AND PROCEEDINGS BELOW
At approximately 3:30 p.m. on August 5, 1994, Patricia Battles was among a group of people waiting for a streetcar at Carondelet and Canal Streets in New Orleans. When the streetcar arrived, Ms. Battles reached into her shoulder-strap purse and took some money out of her wallet to pay her fare. As she was boarding the streetcar she felt something hit her foot, looked down and saw the comb which had been in her purse just moments earlier. Seeing this, the streetcar driver suggested to Ms. Battles that she check to see if her wallet was gone, and she discovered that her wallet, indeed, was missing. Just then, several bystanders said "there he goes," and she saw Mr. Neville quickly walking away with her wallet. Ms. Battles got off of the streetcar and began chasing the defendant down Carondelet Street, yelling at him to stop.
New Orleans Police Sergeant Melvin Howard was sitting in an unmarked car at the corner of Carondelet and Common Streets when he saw Mr. Neville running towards him, followed by Ms. Battles. Sergeant Howard saw the defendant throw down a wallet, joined in on the chase and quickly apprehended Mr. Neville. After Ms. Battles recounted the events and identified the wallet as hers, Sergeant Howard arrested Mr. Neville for purse snatching.
The defendant was tried on December 5, 1994 by a six-member jury that found him guilty as charged. After a substitution of counsel, Mr. Neville filed motions for a new trial and for a post-verdict judgment of acquittal, both of which were denied. The defendant was then charged and found guilty of being a fourth felony offender, and was sentenced to twenty years at hard labor without benefit of probation, parole, or suspension of sentence. This appeal followed the denial of Mr. Neville's timely motion for reconsideration of sentence.

DISCUSSION

Assignment of Error # 1
Mr. Neville first complains that the trial court erred in failing to consider his pro se request at the beginning of trial for substitution of counsel. He contends that he was at odds with his Loyola Law School Clinic attorneys throughout the proceedings, yet the trial court did not allow him to explain the nature and extent of the problems before summarily denying his motion. Mr. Neville argues that this prejudicial error requires reversal of his conviction, but offers no authority in support of this contention.
"An indigent defendant is entitled to the appointment of competent counsel, but is not entitled to choose or to decline a particular attorney." State v. Wille, 595 So.2d 1149, 1154 (La.), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). An accused's right to counsel of his choice is *537 not absolute and cannot be used so as to obstruct orderly court proceedings. State v. Harper, 381 So.2d 468, 470-71 (La.1980). In State v. McClintock, 535 So.2d 1231 (La.App. 3d Cir.1988),[1] it was held that the trial court's denial of a motion to substitute counsel, urged after voir dire but before trial, did not constitute reversible error in light of the inconvenience such a change would have entailed and the lack of prejudice to the defendant. The court stated that "[t]he right to counsel of choice must be exercised at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings," id. at 1233 (citation omitted), especially when such a change would necessitate a continuance and its disrupting complications.
At the beginning of trial, Mr. Neville stated "I'd like to request substitution of counsel," to which the trial judge responded, "I don't think we'll be able to do that for you, sir, but I'll note the objection." The court then made note of a handwritten motion to quash that had been filed pro se and, without explaining the grounds urged or the relief sought, denied the motion. The pleading was not included in the record. There are no statements by trial counsel about any problems in representing Mr. Neville, and nothing in the transcript indicates any dissension during the course of trial.
Mr. Neville's appellate counsel has not pointed to any lack of preparedness or incompetency on the part of the trial attorneys, nor is it alleged that any conflict of interest should have barred the representation. Although the filing of the pro se motion to quash suggests Mr. Neville was dissatisfied in some way, the failure to present it to this court, or even to discuss it in brief, prevents our consideration of the pleading. In sum, the record does not indicate any basis for the trial court to appoint new counsel just as trial commenced. We therefore find this assignment of error to be without merit.

Assignment of Error # 2
By this assignment, Mr. Neville asserts that the improper admission of hearsay testimony requires reversal of his conviction. He complains that Ms. Battles' testimony concerning the streetcar driver's suggestion to "see if your wallet is gone" and the bystanders' cries of "there he goes" was extremely prejudicial because of the lack of direct evidence against him. It is argued that since "there is not one scintilla of evidence supporting the victim's testimony that [these statements] were ever made," admission of the testimony was precluded.
Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. La.Code Evid. Ann. art. 801 C. However, if "[t]he statements are events speaking for themselves under the immediate pressure of the occurrence, ... and not the words of the participants when narrating the events, and which are ... immediate concomitants of" the criminal act, then they are not excludable as hearsay. La.Code Evid. Ann. art. 801 D(4). Hearsay statements are not excluded, regardless of the availability of the declarant, if the statement describes or explains "an event or condition made while the declarant was perceiving the event or condition," or if the statement relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." La.Code Evid. Ann. art. 803(1) and (2).
In this case, the victim's testimony regarding the statements made by the streetcar driver and the bystanders were properly admitted into evidence. First, although Mr. Neville's brief suggests Ms. Battles' credibility was questionable, she was subject to cross examination at trial, permitting the defense to challenge her version of events in front of the jury. Second, because these statements were not offered to prove the truth of what the driver and the bystanders said, but only to explain why Ms. Battles acted as she did, they were not hearsay. Alternatively, as statements made under the immediate pressure of the occurrence through the spontaneous words of the participants, rather than as narration of the events, they are not defined as hearsay. Third, even *538 if the statements were hearsay, they were nevertheless admissible because they described or explained the event while it was being perceived and while under the stress of excitement caused by the event. Finally, when considered in context of all the evidence presented, we do not find any significant prejudice to Mr. Neville. Therefore, no reversible error is established by the admission of the challenged testimony.

Assignments of Error # 3 & # 4
Mr. Neville next asserts error in the denial of his motions for new trial and for postverdict judgment of acquittal because the evidence is insufficient to support a conviction for purse snatching. He argues that no evidence was presented to establish how he came into possession of Ms. Battles' wallet, and there is thus nothing to rebut the hypothesis that he committed the theft of the wallet after it had fallen to the ground with Ms. Battles' comb. Mr. Neville therefore contends that his conviction must be reversed under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and its progeny.
La. R.S. 14:65.1 A provides:
Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
In State v. Anderson, 418 So.2d 551 (La. 1982), our Supreme Court affirmed a conviction for purse snatching where the victim's purse had been removed from the floor between her legs, with only a "vibration" to alert her to the loss. The court stated that "snatching" did not require an actual face-to-face confrontation and was distinguished from "use of force" and "intimidation" by the statute's wording. Similarly, in State v. Capote, 474 So.2d 497 (La.App. 4th Cir.1985), this court found that even though the victim of a purse snatching did not feel her purse being removed from the back of her chair, its taking from the area of her control was sufficient to support the defendant's conviction.
As in both Anderson and Capote, the evidence in this case was sufficient to prove beyond a reasonable doubt that Mr. Neville "snatched" Ms. Battles' wallet. Even if he merely picked it up from the ground after it fell from the purse, his alternative hypothesis, the wallet was still in Ms. Battles' immediate control since it would have been by her foot, where she found her comb. Therefore, these assignments of error are without merit.

Assignment of Error # 5
In his next assignment, Mr. Neville complains that the trial court's failure to include theft among the responsive verdicts available to the jury was reversible error. However, the record reflects no request for the inclusion of this alternative nor any objection to its omission from the verdict sheet. Accordingly, the failure to raise this issue in the trial court precludes appellate review. La. Code Crim. Proc. Ann. art. 841; see State v. Dufore, 424 So.2d 256, 258 (La.1982); State ex rel. Elaire v. Blackburn, 424 So.2d 246, 248 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).

Assignment of Error # 6
Mr. Neville next asserts that the evidence was insufficient to support his adjudication as a fourth felony offender.[2] The bill of information under La. R.S. 15:529.1 charged that this defendant had previously pled guilty to forgery in 1985, had been convicted of attempted simple escape in 1989, and had pled guilty to theft in 1993. Uncontested fingerprint evidence linked Mr. Neville to both the 1985 and 1993 prosecutions, but he contends that because no fingerprint or photographic evidence was submitted to establish his connection to the 1989 conviction, the State failed to prove either the existence of three prior felonies or that the cleansing period had elapsed between the 1985 and 1992 convictions.
To obtain a multiple offender conviction, the State is required to establish both *539 the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Hawthorne, 580 So.2d 1131, 1133 (La.App. 4th Cir.1991). The defendant's identity may be shown by a variety of methods, including the testimony of witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record. State v. Curtis, 338 So.2d 662, 664 (La.1976). Establishing that the defendant's name and that of the person previously convicted is the same is insufficient evidence of identity under R.S. 15:529.1. Id.
At Mr. Neville's multiple bill hearing, Officer Keith Arnold testified that there were no fingerprints on the arrest register for the 1989 conviction to use for comparison purposes. The State relied instead on the biographical information in each of the three arrest registers to prove identity, as well as the fact that the minute entry for the 1989 trial showed Mr. Neville had testified in his own defense. It is argued that, in the absence of either fingerprint or photographic evidence, a similar linkage was found sufficient evidence of identity in State v. Hamilton, 356 So.2d 1360, 1367 (La.1978), overruled on other grounds by State v. Johnson, 94-1379, pp. 16-17 (La.11/27/95), 664 So.2d 94, 101-02. We agree, and find that other competent evidence establishes Mr. Neville's identity under R.S. 15:529.1.
As previously noted, Mr. Neville does not contest the evidence that he is the same person who pled guilty to forgery in 1985 and to theft in 1993. The arrest registers for all three prosecutions show the same name, date of birth, address, and social security number. Additionally, a minute entry from the record of the simple escape charge establishes that the arrest register, bill of information, plea waiver form, commitment form, two minute entries and the docket master from the 1985 forgery prosecution were admitted into evidence without objection at that 1989 trial. Because this evidence directly links the 1985 and the 1989 prosecutions, and Mr. Neville's fingerprints identify him as the defendant in the 1985 case, we find the State has provided sufficient proof under R.S. 15:529.1 that Mr. Neville was the same person convicted of all three prior offenses. Hamilton, supra. Thus, because less than five years elapsed between each of the charges, the State also proved that the cleansing period had not elapsed. Therefore, Mr. Neville's adjudication as a fourth felony offender is affirmed.

Assignment of Error # 7
In his final assignment of error, Mr. Neville asserts that although he received the minimum sentence for a fourth felony offender, twenty years at hard labor without benefit of probation or suspension is unconstitutionally excessive considering the nonviolent circumstances of the present offense as well as his prior offenses.
Although a sentence is within the statutory limits, it may still violate a defendant's constitutional protection against excessive punishment. State v. Pollard, 93-0660, p. 1 (La.10/20/94), 644 So.2d 370, 371; State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). As the Supreme Court has emphasized, a sentence is constitutionally excessive "if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." Dorthey, 623 So.2d at 1280, quoting State v. Scott, 593 So.2d 704, 710 (La.App. 4th Cir. 1991). The trial court has the authority to reduce a mandatory minimum sentence provided by statute for a particular offense and offender when such a term would be excessive under this standard. Pollard, supra. In imposing a particular sentence, "[t]he court shall state for the record the considerations taken into account and the factual basis therefor." La.Code Crim. Proc. art. 894.1 C. An appellate court is obligated to review criminal sentences for excessiveness under Article I, Section 20 of the Louisiana Constitution, Dorthey, supra, but must affirm that sentence if it is supported by the record, La.Code Crim. Proc. Ann. art. 881.4 D.
In the present case, no explanation of sentencing considerations was given by the trial *540 court, which stated only that "The Court finds that the defendant will be sentenced as a fourth offender under the multiple offender law to the minimum sentence of twenty years." The record establishes, however, that although Mr. Neville's conduct in the present case constituted the crime of purse snatching, defined as a crime of violence in La. R.S. 14:2(13)(z), no physical violence or harm was done to Ms. Battles. Similarly, his prior convictions for forgery and theft were for his unauthorized use of credit cards belonging to others, with no allegation of physical contact with a victim. Simple escape is not listed as a crime of violence in R.S. 14:2(13), and Mr. Neville was convicted only of an attempted simple escape. It appears, however, that Mr. Neville was earlier convicted of simple possession of marijuana in 1983, and has had two arrests, in 1983 and in 1993, for which charges were refused.
In view of the facts underlying this case, Mr. Neville's lack of a violent criminal history, and the trial court's failure to articulate the factual basis for imposing a twenty-year sentence, we are unable to conclude that this term is not excessive under the constitutional standard. We must therefore vacate the sentence and remand for resentencing in accordance with the views expressed herein.
A review of the record reveals no errors patent.

CONVICTION AFFIRMED; SENTENCE VACATED REMANDED FOR RESENTENCING.
LOBRANO, J., dissents in part.
LOBRANO, Judge, dissenting in part.
I respectfully dissent from that portion of the majority opinion which reverses defendant's sentence. Defendant is a fourth felony offender who received the statutory minimum of twenty years. There is no need for an 894.1(c) articulation when the minimum is imposed and I do not find the sentence excessive. I would affirm.
NOTES
[1] The Supreme Court later granted leave for an out-of-time review of the Third Circuit decision in State ex rel. McClintock v. State, 538 So.2d 606 (La.1989), but no later reported opinion is found.
[2] This issue was preserved for appellate review by the filing of a written motion to quash the multiple bill. See State v. Cossee, 95-2218 (La. App. 4th Cir. 7/24/96), 678 So.2d 72.