ROLAND L. BELSOME, Judge.
 

 liThe defendant, Frank Moody, was charged by bill of information with one count of aggravated burglary of an inhabited dwelling in violation of La. R.S. 14:60. The defendant pled not guilty at his arraignment. Subsequently, the trial court heard pre-trial motions and found probable cause and denied the defendant’s Motion to Suppress the Identification.
 

 On May 12, 2009, a twelve-member jury found the defendant guilty as charged. Following a multiple bill hearing on July 23, 2009, the trial court adjudged the defendant a triple offender and sentenced him pursuant to La. R.S. 15:529.1 to sixty years at hard labor, with credit for time served, sentence is to run consecutive with any other sentence imposed. That same day, the defense filed a Motion to Reconsider Sentence, which the court denied.
 

 On December 3, 2008, NOPD Detective Anthony Edenfield and his partner investigated the aggravated burglary of a dwelling in the 800 block of St. Ann Street. When Detective Edenfield arrived on the scene, he noticed that the front door to the residence showed signs of forced entry. Detective Edenfield spoke Uwith the vie-tim/resident of the house, Ms. Ann Harrington, and learned that a man, had broken into her house, demanded money, and stole her flat screen television and her laptop computer. Ms. Harrington said she got a good look at the defendant when he came toward her in her bedroom. She described her assailant to the police as
 
 *454
 
 wearing a white T-shirt, black pants with a cargo pocket on one side and white sneakers. He had black facial hair and a widow’s peak hairline.
 

 A description of the assailant provided by the victim was broadcast on the police radio. The victim was transported to a show-up lineup. Approximately thirty to forty-five minutes after the incident, police transported her to North Rampart Street where she identified a man stopped by the police as the man who broke into her house, threatened her and stole her property. Ms. Harrington identified her belongings in a box which was sitting in the rear of the police car.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 In the first assignment of error, the defendant argues that the trial court erred in denying his Motion to Suppress the Identification because the show-up lineup created a substantial likelihood of irreparable misidentification because he was the only suspect in the show-up.
 

 A defendant who challenges the identification procedure must prove both that the identification itself was suggestive and that a likelihood of misidentification existed as a result of the identification procedure.
 
 State v. Valentine,
 
 570 So.2d 533, 535 (La.App. 4 Cir.1990),
 
 citing Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Moreover, even if the identification could be considered suggestive, it is the likelihood of | smisidentification that violates due process, not merely the suggestive identification procedure.
 
 See, e.g., State v. Thibodeaux,
 
 98-1673, p. 21 (La.9/8/99), 750 So.2d 916, 932. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
 

 Generally, one-on-one identifications are not favored but are permissible when justified by the circumstances.
 
 State v. Woodberry,
 
 95-2402, p. 5 (La.App. 4 Cir. 12/27/96), 686 So.2d 984, 988. This is particularly true when the accused is apprehended within a short time after the occurrence and is returned to the crime scene.
 
 Id.
 
 Even a suggestive, out-of-court identification will be admissible if it is found reliable under the totality of circumstances.
 
 State v. Guy,
 
 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517. If a suggestive identification procedure has been proven, a reviewing court must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification at trial.
 
 State v. Martin,
 
 595 So.2d 592, 595 (La.1992).
 

 In order to determine whether the identification presents a substantial likelihood of misidentification, courts look to the totality of circumstances, and consider the following
 
 “Manson
 
 factors” set forth by the U.S. Supreme Court: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the | ¿length of time between the crime and the confrontation.
 
 Manson,
 
 432 U.S. 98, 97 S.Ct. 2243, 2253. The corrupting effect of the suggestive identification itself must be weighed against these factors.
 
 Martin,
 
 595 So.2d at 595.
 

 A trial court’s determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion.
 
 State v. Offray,
 
 2000-0959 (La.App. 4 Cir. 9/26/01), 797 So.2d 764.
 

 
 *455
 
 Applying the
 
 Mamón
 
 factors to this case supports the admissibility of the identification. The victim testified that within thirty to forty-five minutes of the incident she was transported a short distance from her residence where she viewed the defendant as he stood on the street with police. The victim was unequivocable in her identification. Moreover, the victim stated that the police did not tell her they had a “suspect” for her to identify. It was not until after the victim identified the defendant that she was told property fitting the description of the property taken from her residence had been retrieved.
 

 Additionally, the victim testified that she looked directly at her assailant for several moments as he stood in the doorway to her bedroom from a distance of approximately ten feet. She noted that the assailant had tattoos on his hands and provided the police with a detailed physical description of the assailant — black male, wearing a white T-shirt, black pants with a cargo pocket on one side and white sneakers. She further stated that the assailant had black facial hair and widow’s peak hairline.
 

 | ¡Accordingly, the trial court did not abuse its discretion by denying the Motion to Suppress the Identification.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 By this assignment, the defendant argues that the non-unanimous jury conviction is unconstitutional.
 

 Louisiana Constitution Article I, § 17(A) and La.C.Cr.P. art. 782(A) provide that in cases where punishment is necessarily at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than a unanimous jury does not violate a defendant’s right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment.
 
 See Apodaca v. Oregon,
 
 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).
 

 Recently, in
 
 State v. Bertrand,
 
 2008-2215, p. 6 (La.3/17/09), 6 So.3d 738, 742, the Louisiana Supreme Court addressed and upheld the constitutionality of non-unanimous jury verdicts:
 

 ... the case law of the United States Supreme Court also supports the validity of these decisions. Although the
 
 Apodaca
 
 decision was, indeed, a plurality decision rather than a majority one, the Court has cited or discussed the opinion not less than sixteen times since its issuance. On each of these occasions, it is apparent that the Court considered that Apodaca’s holding as to non-unanimous jury verdicts represents well-settled law.
 

 Bertrand,
 
 6 So.3d at 742.
 

 In accordance with
 
 Bertrand,
 
 we will not disturb the non-unanimous jury verdict.
 

 [ASSIGNMENT OF ERROR NUMBER 3
 

 In his final assignment of error, the defendant contends that the State failed to prove his identity as a third felony offender. He argues that his fingerprints were not contained on documentation the State introduced to prove his conviction of one of the alleged prior felonies; hence, his adjudication as a triple offender is invalid.
 

 La. R.S. 15:529.1 D(l)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. The State must establish the prior felony and that the defendant was the same person convicted of that felony.
 
 State v. Neville,
 
 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534. There are various methods available to prove that the defendant is the same
 
 *456
 
 person convicted of the prior felony offense, such as testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record.
 
 State v. Henry,
 
 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322.
 

 A review of the record in this matter shows that the multiple bill of information alleged two prior convictions: Case No. 441-890 in which the defendant pled guilty to crime against nature; and Case No. 473-452 in which the defendant pled guilty to simple burglary.
 

 At the trial on the multiple bill, the State called NOPD Officer George Jackson, an expert fingerprint analyst and custodian of arrest registers and fingerprint cards. Officer Jackson identified State’s Exhibit 1 as the fingerprint |7card containing the fingerprints which Officer Jackson took from the defendant in court on July 17, 2009. The officer then identified State’s Exhibit 2 as a certified copy of an arrest register documenting the defendant’s August 20, 2003, arrest for the offense of crime against nature (Case No. 441-890). Officer Jackson testified that he compared the fingerprint card to the fingerprints on the back of the August 20, 2003, arrest register and concluded the prints were one and the same and belonged to the defendant.
 

 Next, Officer Jackson identified State’s Exhibit 3, in globo, as a cert pack containing the bill of information, plea of guilty form dated October 29, 2003, docket master, minute entry and arrest register pertaining to a charge of crime against nature. The officer proceeded to compare the arrest register in State’s Exhibit 3 to State’s Exhibit 2 as to Bureau of Identification number, item number, arrest date and the name on the documents and found that the information was the same on both exhibits. From his analysis of the fingerprints and documents, Officer Jackson concluded that the defendant herein was the same individual who pled guilty to crime against nature on October 29, 2003.
 

 Lastly, Officer Jackson identified State’s Exhibit 4, in globo, as a cert packet containing a bill of information, plea of guilty form dated March 24, 2008, docket master, minute entry, screening action form and arrest register pertaining to a charge of simple burglary (Case No. 473-452). The officer stated that there were two fingerprints on the back of the plea of guilty form dated March 24, 2008, in Exhibit 4. He compared the prints on the back of the plea of guilty form in Exhibit 4 with the fingerprints on Exhibit 1 and found that the prints matched and belonged |Rto the defendant, Frank Moody. Officer Jackson testified that he had no doubt that the person identified in State’s Exhibits 1, 2, 3 and 4 is the defendant in this case. After hearing Officer Jackson’s testimony and examining the State’s exhibits, the trial judge found the defendant to be a third felony offender.
 

 Where a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights, and that he knowingly waived those rights prior to the guilty plea, as required by
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
 
 State v. Shelton,
 
 621 So.2d 769 (La.1993). If the defendant denies the allegation of the bill of information, the State has the burden of proving the existence of the prior guilty pleas, and that the defendant was represented by counsel.
 
 Shelton,
 
 621 So.2d at 779.
 

 In this case, the evidence offered by the State proved that the defendant was advised of his Boykin rights and chose to waive them; the existence of the defen
 
 *457
 
 dant’s prior guilty pleas; and that the defendant was represented by counsel for both of his guilty pleas. At the multiple bill hearing in this case the State introduced the waiver of rights-plea of guilty forms for the defendant’s 2003 conviction for crime against nature and his 2008 conviction for simple burglary. Each guilty plea form is initialed and signed by the defendant, the judge and defense counsel in the appropriate places. Also, both guilty plea forms indicate that the defendant was advised of his rights and chose to waive his rights and plead guilty. Based on the record, we do not find any error in the trial court’s determination that the defendant was a third felony offender.
 

 |c|For the reasons discussed, we affirm the defendant’s conviction and sentence.
 

 AFFIRMED